IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL ACTION NO. 19-392 |
| | : | |
| MALAN DOUMBIA | : | |

**MEMORANDUM OPINION**

Defendant Malan Doumbia is charged with participating in a complex credit/debit card fraud scheme from 2012 to 2019, in which he and his co-conspirators—Souleymane Diarra and Souleymane Jallow—purchased and used hundreds of stolen credit/debit card numbers. He faces trial for conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; counterfeit access device fraud, in violation of 18 U.S.C. § 1029(a)(1) and § 1029(a)(4); aggravated identity theft, in violation of 18 U.S.C. § 1029(A); conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h); and aiding and abetting, in violation of 18 U.S.C. § 2. In advance of trial, he filed a motion to suppress physical evidence in which he requested a *Franks* hearing. Specifically, he moves to suppress evidence seized by United States Secret Service agents when they searched his residence pursuant to a warrant. He contends that his rights under the Fourth Amendment were violated by the issuance of the search warrant because the supporting affidavit contained materially false statements that were made either intentionally or with reckless disregard for their truth. For the following reasons, Defendant's motion will be denied.

I.   **FACTUAL BACKGROUND**

On March 11, 2015, United States Secret Service ("USSS") agents searched Defendant's

1

residence.  During the search, the agents found tools he allegedly used to carry out the fraud scheme, including re-encoded cards, blank card stock, and computers which contained thousands of stolen debit/credit card numbers.  The search was conducted pursuant to a warrant issued by a magistrate judge based on an affidavit from a USSS Special Agent.

According to the affidavit, USSS Agents worked with three separate members of the conspiracy, identified as Sekou Fofana, Confidential Informant #1 ("C1"), and Confidential Informant #2 ("C2") to investigate the scheme.  These informants explained to the Special Agent how the fraud scheme worked, where it took place, and the identities of other defendants, including Defendant.  In her affidavit the Special Agent states that "the information which [each individual] provided to me proved to be reliable," and describes in detail how she worked with the individuals to further investigate the case.  According to her affidavit, she received information from Fofana and C1 that fraudulent credit cards could be found in Defendant's home.  She then outfitted C1 with audio and visual recording devices and sent him to the home of Defendant.  Inside Defendant's home, C1 observed the computers he recalled previously seeing when receiving fraudulent cards from Defendant prior to the investigation.  The Special Agent also observed a text message from another defendant, Diarra, indicating that Defendant possessed a credit-card making machine in his home; the affidavit further states that the other informant, C2, received a message from Diarra to the same effect.

The affidavit also states that Diarra informed C1 that C1 would be able to receive fraudulent cards not only in Defendant's home, but in the home of another defendant, Souleyman Jallow.  C1 visited Jallow's home and also observed equipment there used for the alleged scheme, such as card-scanning devices.  Thereafter, the Special Agent instructed another

2

informant, C2, to stop at Jallow's home to receive fraudulent cards. C2 received the cards at Jallow's home, which the Special Agent thereafter analyzed and confirmed were fraudulently encoded.

## II.  STANDARD OF REVIEW

The Warrant Clause of the Fourth Amendment of the United States Constitution provides in relevant part that "no Warrants shall issue but upon probable cause, supported by Oath or affirmation. U.S. Const. amend. IV. In *Franks v. Delaware*, the Supreme Court held that a criminal defendant has the right to challenge the truthfulness of factual statements made in an affidavit for probable cause in support of a warrant after the *ex parte* issuance of the warrant. 438 U.S. 154, 171 (1978). While there is a "presumption of validity with respect to the affidavit supporting the search warrant[,]" *id.*, the defendant may request an evidentiary hearing to rebut that presumption.

To obtain a *Franks* hearing, the defendant must make a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Franks*, 438 U.S. at 155-56; *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir.2006). To meet this threshold, the defendant must present more than conclusory statements that the affidavit contains false statements or omissions. *Franks*, 438 U.S. at 171; *Yusuf*, 461 F.3d at 383 n.8. He must specifically identify allegedly false statements or omissions in the affidavit and provide a statement of reasons supporting his argument. *Franks*, 438 U.S. at 171. He must also provide an offer of proof or give a satisfactory explanation for the absence of proof. *Id.* Sworn affidavits or reliable statements from witnesses are examples of

3

offers of proof sufficient to satisfy the substantial preliminary showing.  *Id.*; *Yusuf*, 461 F.3d at 383 n.8.  When demonstrating that the affiant omitted a material fact or included a false statement with the requisite mens rea, it is insufficient to show the affiant acted with negligence or made an innocent mistake.  *Yusuf*, 461 F.3d at 383.  Rather, the affiant must have acted with, at minimum, a "reckless disregard for the truth," defined as either "recklessly omit[ting] facts that any reasonable person would know that a judge would want to know" or asserting facts when one "has obvious reasons to doubt the truth of what he or she is asserting."  *Wilson v. Russo*, 212 F.3d 781, 783 (3d Cir. 2000).

Only if the challenger provides sufficient proof to obtain a *Franks* hearing, does the court move on to the next step—to actually hold the hearing at which the challenger must prove by a preponderance of evidence that (1) the affiant made false statements or omissions intentionally, knowingly, or with reckless disregard for the truth, and (2) such statements were material to the probable cause determination.  *Id.*  If the challenger satisfies this burden, the court will excise the false statements and omissions from the affidavit and assess whether the corrected affidavit establishes probable cause.  And if the defendant is able to ultimately meet this burden, "the Fourth Amendment requires that . . . the fruits of the search [must be] excluded to the same extent as if probable case was lacking on the face of the affidavit."  *United States v. Frost*, 999 F.2d 737, 743 (3d Cir.1993) (quoting *Franks*, 438 U.S. at 156).

### III.    DISCUSSION

Defendant first challenges paragraphs 9 and 10 of the affidavit underlying the warrant, in which the Special Agent states that Defendant is a member of a network of bank card and identity fraud thieves.  Defendant argues that these statements are false because "[The] Special

4

Agent . . . relied solely upon the information provided by Sekou Fofana to support this allegation." But Defendant is incorrect; paragraph 11 of the warrant shows that the Special Agent relied on information from a parallel police investigation for this point, specifically information from a police detective that C1 obtained his cards from Defendant. It also appears that the Special Agent was already aware, even before speaking with Fofana, that Defendant appeared to be part of the scheme based on independent investigation by the USSS.

Defendant next argues that the statements are false because "the allegation is unsupported by any information provided in discovery." But it is *Defendant's* burden to provide "an offer of proof contradicting the affidavit," and merely making this conclusory statement without providing any facts as to why the statements are false are insufficient to trigger a hearing under *Franks*.[1] *Yusuf*, 461 F.3d at 383 n.8; *see, e.g., United States v. Heilman*, 377 F. App'x 157, 178-79 (3d Cir. 2010) (affirming denial of *Franks* hearing where Defendant "neither explained the absence of nor offered any evidence in the form of an affidavit, witness testimony, or otherwise, that proves the CI was a drug user, explains why his drug use would encourage him to provide false information, or describes what sort of false information he believed the CI had given.").

Next, Defendant argues that the statements are false because "[the Special Agent relied solely upon the uncorroborated statement of a cooperating criminal seeking consideration and leniency at sentencing for a crimen falsi convicition." Again, the warrant shows that the Special Agent did not rely "solely" on this information from Fofana to consider Defendant to be a

---

[1] Defendant's papers reference an "affidavit of Defendant Doumbia," but the "affidavit" is in fact just a restatement of legal arguments made in the Motion (see ECF No. 59-2), is unsworn, and contributes no new information that would contradict that alleged in the warrant affidavit. It therefore does not constitute the offer of proof required under *Franks*. *Yusuf*, 461 F.3d at 383 n.8.

5

member of the network.  Moreover, Fofana's statement is not uncorroborated: the affidavit shows that the Special Agent relied on information from a separate police investigation for this statement, and independently confirmed this information in an interview with C1, who later went to Defendant's home in person and saw equipment for the scheme in Defendant's apartment. The warrant also states that another Defendant, Diarra, separately told C2 that C2 would be able to receive fraudulent cards in Defendant's home.  Fofana's statements are therefore not "uncorroborated."  *See, e.g., United States v. Leppert*, 408 F.3d 1039, 1041 (8th Cir. 2005) ("the tips of two informants may be 'reciprocally corroborative").

Finally, although Defendant suggests that the Special Agent's statements are false because Fofana is a "cooperating criminal" allegedly seeking consideration for his information, Defendant again provides no proof for the proposition that the Special Agent had an "obvious reason to doubt the truth" of Fofana's statements, notwithstanding his cooperation.  *Wilson v. Russo*, 212 F.3d 781, 783 (3d Cir. 2000).  After all, "it is well-established that a substantial showing of the *informant's* untruthfulness is not sufficient to warrant a *Franks* hearing.  The Supreme Court made clear throughout *Franks* that a substantial preliminary showing of intentional or reckless falsity *on the part of the affiant* must be made in order for the defendant to have a right to an evidentiary hearing on the affiant's veracity." *United States v. Brown*, 3 F.3d 673, 677 (3d Cir. 1993) (emphasis in original).  The Special Agent corroborated Fofana's statements, and Defendant does not provide any facts suggesting that she may otherwise have relied on them with a reckless disregard to the truth.[2]

---

[2] As to Fofana's alleged receipt of leniency, a magistrate may rely on information from an informant where the magistrate has a "substantial basis for crediting" that statement.  *United States v. Stearn*, 597 F.3d 540, 556 (3d Cir. 2010).  Defendant has not pointed to case law stating that judges lack this "substantial basis" when an informant

Defendant next challenges paragraphs 11 and 12 of the affidavit as containing false statements. These paragraphs state that C1 received fraudulent access device cards from Defendant, and that C1 had seen Defendant hold additional cards in his hand when C1 received the cards from him prior to his arrest. Defendant repeats that these portions of the affidavit contain misstatements because "[the Special Agent] relied solely upon the information provided by C1 to support these allegations"; "the allegations are unsupported by any information provided in discovery"; and "[the Special Agent] relied [] upon the uncorroborated statement of a cooperating criminal defendant seeking consideration and leniency at sentencing for a crimen falsi charge." But as discussed above, it is not enough for Defendant to challenge, in a conclusory manner, the Special Agent's reliance on C1's information; Defendant must provide affirmative evidence raising an inference that she did so in a manner that recklessly disregarded the truth, *i.e.,* that she had an "obvious reason to doubt the truth" of C1's statements. *See Brown*, 3 F.3d at 678 (even if certain events "never occurred as allegedly reported by [an] informant, that shows little or nothing about the affiant's veracity"); *Yusuf*, 461 F.3d at 383 n.8 (challengers "must present an offer of proof contradicting the affidavit"). Defendant provides no evidence to that effect. *See, e.g., Heilman*, 377 F. App'x at 178 (affirming denial of *Franks* hearing where Defendant alleged that confidential informant "has a myriad of reasons to provide false information to law enforcement" without providing evidence as to why); *United States v. Darby*, 684 F. App'x 219, 222 (3d Cir. 2017) (affirming denial of *Franks* hearing because defendant

---

cooperates with the government or receives consideration for his or her assistance, and existing cases suggest otherwise. *See United States v. Williams*, 477 F.3d 554, 558 (8th Cir. 2007) ("an affidavit is not robbed of its probative effect by its failure to mention that the informant "was a paid informant who avoided prosecution by virtue of her testimony . . .").

"has failed to identify any facts withheld by the Government that would tend to undermine the CI's reliability").

Defendant next challenges paragraph 13 of the affidavit, in which the Special Agent avers that C1 went to Defendant's home while outfitted with an audio recording device, and saw what C1 believed were the computers he had previously seen in Defendant's apartment when he picked up re-encoded cards from Defendant prior to his arrest. Defendant repeats his argument that the Special Agent "relied solely upon information from C1 to support these allegations," and that C1 is a "cooperating criminal." These arguments fail to meet the *Franks* standard for the same reasons outlined above, *i.e.*, failure to introduce evidence suggesting the Special Agent's reckless disregard for the truth. Absent this evidence, Defendant's arguments amount to "exactly the sort of conclusory statement[s] that [are] insufficient to meet the *Franks* preliminary threshold." *Heilman*, 377 F. App'x at 178; *Franks*, 438 U.S. at 154.

Defendant also argues that the Special Agent omitted information from the affidavit that she: can understand the language spoken between C1 and Defendant; was able to identify the voice on the audio recording as Defendant; or that she used a voice recognition program to identify the voice on the audio recording as that of Defendant. Defendant does not make a "substantial preliminary showing" under *Franks* because these omissions alone do not raise an inference of "reckless disregard for the truth" on the part of the Special Agent. *Franks*, 438 U.S. at 156. "Omissions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge would want to know." *Wilson*, 212 F.3d at 783. However, an affiant is not required to share all that he or she knows about the investigation in an affidavit in support of a search warrant. *Id.*

The significance of paragraph 13 of the affidavit is not that Defendant or C1 said anything inculpatory—C1 apparently greeted Defendant and Defendant merely told C1 to come back later because he was sleeping. Rather, the exchange was relevant because of what C1 saw, namely, the computers he had previously seen in Defendant's apartment when he had previously received fraudulent cards from Defendant prior to his arrest. Because the verbal exchange between Defendant and C1 are not material to the affidavit, the Special Agent's omission of her knowledge regarding the language spoken or other details pertaining to the audio recording are not the kind of details a judge would "want to know" in making a probable cause determination and therefore do not suggest her reckless disregard for the truth. *See, e.g., United States v. Woodley*, 788 F. App'x 100, 103–04 (3d Cir. 2019) (government's failure to mention poor quality of audio recording did not warrant *Franks* hearing, where Defendant failed to provide "additional proof that the agents lied about the informant's statements").

Defendant next challenges paragraphs 14 and 16 of the affidavit, in which the Special Agent alleged that Diarra told C1 through a text message that Defendant possessed the card-making machine in his apartment. The Special Agent states in paragraph 14 that she observed the text message referenced. Defendant argues that no documentation of the alleged text message was provided in discovery.

Although the government may have[3] an obligation to produce documentation relevant to

---

[3] There are numerous rules and exceptions as to what the government is required to produce during discovery in a criminal case. *See, e.g.*, Fed. R. Crim. P. 16(a)(2) (rules do not authorize "discovery or inspection of statements made by prospective government witnesses except as provided" under the Jencks Act, 18 U.S.C. § 3500). Because discovery of the text message is not what is at issue here, but rather the Defendant's obligation to make a "preliminary substantial showing" that the Special Agent's statements are false, the court does not definitively decide whether discovery obligations were met as to this specific piece of evidence.

9

the credibility of witnesses, *Buehl v. Vaughn*, 166 F.3d 163, 181 (3d Cir. 1999), Defendant's argument alone does not lead to the conclusion that the Special Agent's statement about viewing the text message, made under oath, is *false*, which is what is at issue here. In other words, Defendant's argument on this point, without more, does not overcome the "presumption of validity with respect to the affidavit supporting the search warrant." *Franks*, 438 U.S. 154, 171 (1978).

Indeed, a review of the affidavit only suggests that the Special Agent would find C1's statements (and Diarra's statements to C1) to be reliable, a point she makes explicit in the affidavit. For example, paragraph 16 of the affidavit shows that Diarra told C1 not only that fraudulent cards could be found in Defendant's home, but in Jallow's home as well. The Special Agent instructed C1 to visit Jallow's home, and C1 later told her that he saw equipment to carry out the scheme in Jallow's apartment, including access device cards, computers and a card-scanning device. Thereafter, the Special Agent worked with another informant, C2, to obtain fraudulent cards from Jallow's apartment. C2, who was outfitted with audio and video recording devices, not only received fraudulent cards (which the Special Agent later verified) in Jallow's home, but observed the use of a computer and card-scanning device in the home. C2's receipt of cards from Jallow's apartments therefore suggest that, contrary to Defendant's arguments, the Special Agent had reason to believe C1 about the text he received from Diarra concerning Defendant's home. *See Illinois v. Gates*, 462 U.S. 213, 244 (1983) ("Because an informant is right about some things, he is more probably right about other facts.")

Defendant also argues that the Special Agent does not identify Diarra's phone number, nor does she allege that she confirmed that the phone number was registered to Diarra. Again,

these are the kinds of immaterial details that do not raise an inference of reckless disregard for the truth, absent any evidence to the contrary.  *Cf. Wilson*, 212 F.3d at 788 (discussing *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir.1993)) (omission material where officer told the magistrate that a drug-sniffing dog showed "interest" in the bag of the defendant but failed to inform the magistrate that it had not gone into "alert.")

Finally, Defendant challenges paragraph 18 of the affidavit, in which the Special Agent alleges that Diarra told C2 that Defendant possessed card-making equipment in his apartment. Defendant repeats his arguments that the allegations were unsupported in discovery, that the Special Agent "solely relied" upon this information, and that C2 is a "cooperating criminal" with a motive to lie.  He does not provide, as required, any facts indicating that any information from C2 is false, or that the Special Agent had any reason to believe the information was false. Rather, the Special Agent found C2's information reliable—as she had with Fofana and C1's information—because C2 successfully received (while wearing a wire) fraudulent cards from Jallow.  The Special Agent analyzed the cards C2 received from Jallow and confirmed that they were fraudulently re-encoded.

Because Defendant does not make a "substantial preliminary showing" that the Special Agent made the statements in her affidavit with a reckless disregard for the truth—and because the face of the affidavit suggests otherwise—Defendant is not entitled to a hearing under *Franks*, and his motion to suppress will be denied.  An appropriate order follows.

**BY THE COURT:**

*/s/ Wendy Beetlestone*

_____
**WENDY BEETLESTONE, J.**