IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| v. | NO. 19-392-1-2 |
| MALAN DOUMBIA<br>SOULEYMANE DIARRA | |

<u>**MEMORANDUM OPINION**</u>

Petitioners Souleymane Diarra and Malan Doumbia were convicted by a jury of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; counterfeit access device fraud, in violation of 18 U.S.C. § 1029(a)(1) and (4); five counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A; and, conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). The Court sentenced Diarra to 61 months' imprisonment and Doumbia to 86 months' imprisonment. Proceeding *pro se*, Diarra and Doumbia now move under 28 U.S.C. § 2255 to vacate, set aside, or correct their convictions and sentences, contending that they are unconstitutional because trial counsel rendered ineffective assistance and because the Court relied on unconstitutional statutes. For the reasons that follow, their Motions shall be denied.

I.   BACKGROUND

From 2012 to 2019, Diarra and Doumbia, along with Souleymane Jallow, carried out a complex credit and debit card fraud scheme designed to monetize stolen card numbers. They would purchase stolen bank card numbers in large blocks—often hundreds or thousands at a time—from overseas websites and re-encode those numbers onto blank cards. They then either used the cards themselves or employed runners to use the cards at discount stores such as Walmart and Target to purchase items for resale, including cartons of cigarettes, baby diapers, and gift cards.

1

In March 2015, following an investigation that began in 2012, the United States Secret Service executed search warrants at the residences of Diarra, Doumbia, and Jallow. Agents seized, among other things, card encoding machines, re-encoded bank cards, blank card stock, computers and phones containing thousands of stolen debit and credit card numbers, loaded gift cards, and receipts reflecting wire transfers made to foreign countries.

A federal grand jury indicted Diarra, Doumbia, and Jallow and charged them with the crimes set forth above. At trial, the Government presented evidence obtained during execution of the search warrants as well as: (1) video evidence of Doumbia using a re-encoded credit card to purchase five prepaid phone cards at a Walmart; (2) evidence from a traffic stop during which officers found thirteen pre-paid debit cards concealed behind Diarra's vehicle's headliner (the interior fabric panel covering the roof/ceiling of the car); and, (3) evidence from a baggage inspection by U.S. Customs and Border Protection agents, during which agents discovered a device that appeared to scan or write credit cards, multiple credit cards bearing different names, multiple blank credit cards, and multiple state identification cards bearing Doumbia's photograph and the names shown on the credit cards.

Following a four-day trial, the jury found Diarra and Doumbia guilty on all counts.[1] The Court sentenced Diarra to 61 months' imprisonment, a three-year term of supervised release, restitution in the amount of $60,262.70, and a special assessment of $900. Doumbia was sentenced to 86 months in prison, a three-year term of supervised release, restitution in the amount of $60,262.70, and a special assessment of $900.

Pursuant to Federal Rule of Criminal Procedure 29, Diarra moved for acquittal on all counts, and Doumbia moved for acquittal on the conspiracy to commit wire fraud and aggravated

---

[1] Jallow was never arrested and remains a fugitive from justice, with the Government believing he resides in Africa.

identity theft counts; the Court denied both motions. *See United States v. Doumbia*, 2022 WL 3350364 (E.D. Pa. Aug. 12, 2022). Petitioners further challenged their convictions and sentences in an appeal to the Third Circuit, which affirmed this Court's decisions, holding that sufficient evidence supported the convictions, the jury instructions were not plainly erroneous, and recent precedent does not require vacatur. *See United States v. Diarra*, 2025 WL 1862994 (3d Cir. July 7, 2025**)**.

## II. DISCUSSION

28 U.S.C. § 2255 provides a means for defendants to collaterally attack a federally imposed sentence. *See Davis v. United States*, 417 U.S. 333, 343 (1974) ("[Section] 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus."). It authorizes a court to vacate, set aside, or correct a sentence where, as relevant here, "the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a).

In their Section 2255 motions, Diarra and Doumbia both argue that their sentences violate the Constitution because they received ineffective assistance of counsel, in violation of the Sixth Amendment. S*ee Strickland v. Washington*, 466 U.S. 668, 686 (1984) (reaffirming that "the right to counsel is the right to the effective assistance of counsel" (citing *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970))); *see also* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."). They also argue that their convictions and sentences rest on statutes that violate various other provisions of the Constitution.

### A. Ineffective Assistance of Counsel

Claims of ineffective assistance of counsel are evaluated under the two-part framework set forth in *Strickland v. Washington.* First, the defendant must show that counsel's performance

was deficient—*i.e.*, that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Second, the defendant must show that the deficient performance prejudiced his defense. *Id.* Although a defendant must demonstrate both prongs to prevail, a court need not address both if the defendant makes an insufficient showing on one. *Id.* at 697.

          *i.*    18 U.S.C. § 1349

Diarra and Doumbia bring forth several arguments as to why they received ineffective assistance of counsel in relation to their convictions and sentences under 18 U.S.C. § 1349. Section 1349 provides that "[a]ny person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 18 U.S.C. § 1349.

          a.    <u>Constitutionality</u>

First, Diarra and Doumbia contend counsel was ineffective for failing to challenge Section 1349 as unconstitutional. They argue that because Section 1349 does not itself set forth the elements of wire fraud—which are contained in 18 U.S.C. § 1343—and instead refers only to an "offense under this chapter," the statute permits courts to define the crime, in violation of Article I and the prohibition on federal common-law crimes. S*ee United States v. Hudson*, 11 U.S. 32 (1812). On this theory, Petitioners characterize Section 1349 as merely a "penalty enhancer," rather than a statute that can serve as the basis for a conviction.[2] The Government responds that counsel cannot be ineffective for declining to press a theory that finds no support in the law. The Government is correct.

---

[2] "[S]entencing [also referred to as penalty] enhancements do not punish a defendant for crimes of which he was not convicted, but rather increase his sentence because of the manner in which he committed the crime of conviction." *United States v. Watts*, 519 U.S. 148, 154 (1997).

Although difficult to discern, Petitioners' argument appears to proceed as follows: while the general conspiracy statute, 18 U.S.C. § 371, makes it a crime to conspire to "commit any offense against the United States," but caps imprisonment at five years, 18 U.S.C. § 371, Section 1349 simply "enhances" the penalties for a Section 371 conspiracy when the object offense is wire fraud, allowing the Court to impose the same maximum punishment as the substantive offense—here, up to twenty years under Section 1343. *See* 18 U.S.C. § 1343 (stating that those convicted of wire fraud "shall be fined under this title or imprisoned not more than 20 years, or both.").

That interpretation is incorrect. Section 1349 creates a separate substantive offense—conspiracy (or attempt) to commit the enumerated Chapter 63 fraud offenses—and is not merely a sentencing enhancement to Section 371. S*ee United States v. Bruno*, 2014 WL 1788910, at *4 (E.D. Pa. May 6, 2014) ("The elements of conspiracy to commit wire and mail fraud are the following: (1) an agreement between two or more persons to commit mail or wire fraud; (2) the defendant knowingly joined the conspiracy; and (3) one of the conspirators committed an overt act in furtherance of the conspiracy."). In *Whitfield v. U.S.*, the Supreme Court in discussion of 18 U.S.C. § 1956(h), a statute similarly worded to Section 1349—to wit, "[a]ny person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy," 18 U.S.C. § 1956(h)—found that the language of Section 1956(h) "indisputably created an offense" in that the text "fail[ed] to provide any cross-reference to [Section] 371." 543 U.S. 209, 214 (2005). Other courts have taken the holding of *Whitfield* and applied it to Section 1349. *See Mosberg*, 866 F. Supp.2d at 301 ("Applying *Whitfield's* reasoning here, I conclude that section 1349 creates a substantive offense and is not merely a sentencing

5

enhancement."). Given the close similarity between Section 1956(h) and Section 1349—and the absence of any indication Congress intended Section 1349 to operate merely as an add-on to Section 371—this Court agrees that Section 1349 is a standalone offense.

Courts also recognize that Congress may define a conspiracy offense by reference to the object crime without repeating every element of the underlying substantive offense in the conspiracy statute itself. *See United States v. Knox Coal Co.*, 347 F.2d 33, 38 (3d Cir. 1965) ("In a conspiracy count, the conspiracy is the gist of the offense. Where, as here, the purpose of the conspiracy is the performing of acts which are made an offense by another section of the Criminal Code, every element of that offense need not be set forth.").

Accordingly, Petitioners cannot establish ineffective assistance on this ground. Counsel is not ineffective for failing to pursue a legal theory that is unsupported by governing law, and where an argument lacks merit, Petitioners cannot show prejudice. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument."); *United States v. Figueroa*, 2023 WL 5002851, at *3 (E.D. Pa. Aug. 4, 2023) ("Counsel cannot be faulted to raise meritless arguments, and when argument lacks merit, no prejudice follows from failure to advance it.").

      b.  <u>Jury Instructions</u>

Next, Diarra alone argues that the Court's jury instructions omitted an essential element of the 18 U.S.C. § 1349 offense, and that trial counsel was ineffective for failing to object. Specifically, Diarra contends the jury was instructed only to determine whether he agreed with others "to commit a crime," rather than whether he agreed to commit the specific object offense of the conspiracy—here, wire fraud—thereby allegedly violating Article I and the Fifth and Sixth

6

Amendments.[3]

> Quite to the contrary, instruction on this count given to the jury was as follows:
>
> In order for you to find the defendants guilty of conspiracy to commit wire fraud, you must find that the [G]overnment proved beyond a reasonable doubt each of the following three elements: First, that two or more persons *agreed to commit the offense of wire fraud* as charged in the indictment; second that the defendant was a party or member of the agreement; and third, that the defendant joined the agreement or conspiracy knowing of its objective to commit wire fraud and intended to join together with at least one other alleged conspirator to achieve that objective.

Transcript of Jury Trial – Day 4, Page 29 (emphasis added).

Far from describing a generic agreement "to commit a crime," the instruction required the jury to find an agreement to commit *wire fraud* and that Diarra joined the conspiracy knowing its objective was to commit wire fraud. Because the instruction included the specific object offense, any objection on the ground Diarra proposes would have been meritless. Accordingly, counsel was not ineffective for failing to raise it, and Diarra cannot establish deficient performance or prejudice on this theory. *See Sanders*, 165 F.3d at 253.

### ii. 18 U.S.C. § 1028A

Petitioners also advance several ineffective assistance claims relating to their convictions for aggravated identity theft under 18 U.S.C. § 1028A. Section 1028A(a)(1) provides, in relevant part, that whoever, during and in relation to an enumerated felony offense, "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another

---

[3] The Government argues here—and elsewhere in its response—that Petitioners should be barred from raising ineffective-assistance claims because they had an opportunity to raise those issues on direct appeal but did not. To the extent Petitioners' arguments are properly understood as ineffective assistance of counsel claims (as opposed to freestanding constitutional challenges), the Government is incorrect. The Supreme Court has made clear that "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under [Section] 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

person" shall, in addition to the punishment for the predicate felony, receive a mandatory two-year consecutive term of imprisonment. 18 U.S.C. § 1028A(a)(1).

      a. <u>Factual Impossibility</u>

Diarra and Doumbia first contend that their trial attorneys were ineffective for failing to argue "factual impossibility," asserting it would have been impossible for Petitioners to have been "using" stolen identities at the time alleged because they were asleep in their beds. The Government correctly responds that such an argument would have been frivolous, and counsel cannot be deemed ineffective for declining to raise a meritless argument.

Section 1028A criminalizes not only the *use* of another person's means of identification, but also the *possession* of that means of identification. *See* 18 U.S.C. § 1028A ("Whoever . . . knowingly transfers, *possesses*, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years."). Thus, even if Petitioners were asleep at a particular moment, the offense is not limited to contemporaneous "use" at that instant; knowing possession during and in relation to the predicate felony may suffice. Any "factual impossibility" objection premised on Petitioners' being asleep would therefore be contrary to the statutory text and meritless. Counsel cannot be deemed ineffective for failing to raise a meritless argument. *See Sanders,* 165 F.3d at 253.

      b. <u>Valid Predicate Offense</u>

Second, Diarra and Doumbia argue trial counsel was ineffective for failing to assert that conspiracy to commit wire fraud under 18 U.S.C. § 1349 cannot serve as a predicate for aggravated identity theft, because 18 U.S.C. 1028A requires the identity theft to be committed "during and in relation to" certain enumerated felonies. *See* 18 U.S.C. § 1028A(a)(1), (c).

This argument fails as well. The felonies enumerated in Section 1028A(c) include "any

8

provision contained in chapter 63 (relating to mail, bank, and wire fraud)." 18 U.S.C. § 1028A(c). Courts have repeatedly explained that the parenthetical "relating to mail, bank, and wire fraud" is descriptive and does not limit the predicate offenses to only those provisions most commonly associated with that shorthand label. *See*, *e.g.*, *United States v. Ammon*, 2021 WL 527015, at *1 (D. Utah Feb. 11, 2021) ("[The parentheticals in 18 U.S.C. § 1028A] are not intended to limit the predicate felonies to which they pertain.") (citing *United States v. Abdur-Rahman*, 708 F.3d 98, 101 (2d Cir. 2013)); *see also United States v. Harrell*, 637 F.3d 1008, 1012 (9th Cir. 2011) (noting that the "parentheticals serve as descriptive aids intended by Congress to make reading the statute easier, so that one does not have to look up each citation to see what it is about." (citation omitted)); *United States v. Perischilli*, 608 F.3d 34, 40 (1st Cir. 2012) (noting that the parentheticals "provide[ ] a short-hand description of what several of the cited sections primarily cover."). Because Section 1349 is "contained within Chapter 63," it is a valid predicate felony under Section 1028A(c). Trial counsel therefore could not have been ineffective for declining to raise a contrary, meritless argument. *See Sanders*, 165 F.3d at 253.[4]

     c. Tethered To

Lastly, Petitioner Diarra alone argues counsel was ineffective for failing to argue that 18 U.S.C. § 1028A requires the possession or use of a means of identification to be "tethered to," and in furtherance of, the conspiracy to commit wire fraud. He further argues that the evidence adduced by the Government failed to establish a sufficient connection between the identity misuse and the Section 1349 conspiracy.

Diarra relies on *Dubin v. United States*, which addressed when a defendant "uses"

---

[4] The Government also contends that the indictment identified the predicate offense as "wire fraud," not "conspiracy to commit wire fraud." But as the analysis above explains, either way the argument Petitioners claim counsel should have advanced would have been frivolous, because both wire fraud and conspiracy to commit wire fraud are valid predicate offenses.

9

another person's means of identification "in relation to" a predicate offense, explaining that the use must be "at the crux of what makes the conduct criminal," requiring something "more than a causal relationship" between the identity use and the predicate offense.  599 U.S. 110, 131 (2023).  Rather the means of identification must be used in a manner that is fraudulent or deceptive.  *Id*.  Diarra maintains that the Government did not show that the stolen credit card numbers were used in a manner fraudulent or deceptive, as required by *Dubin* in that it established only that the identity use was incidental to the conspiracy to commit wire fraud.  Yet, whatever the merits of Diarra's reading of *Dubin*, counsel cannot be deemed ineffective for failing to raise an argument premised on *Dubin* because *Dubin* was decided on June 8, 2023, fifteen months after Diarra's trial. [5]  *See*, *e.g.*, *Mullarkey v. Tice*, 2017 WL 3873620, at *10 (W.D. Pa. Sept. 5, 2017) ("In support of this claim, the petitioner relies on *Riley v. California*.  The problem with the claim of ineffectiveness is that *Riley* was decided five years after the petitioner's trial.  For this reason counsel cannot be deemed ineffective for not raising a claim that did not exist at the time of trial.") (cleaned up).  Accordingly, this argument does not establish deficient performance under *Strickland*.  *See Sanders*, 165 F.3d at 253.

### iii.    Restitution Amount

Diarra and Doumbia also target counsel's performance at sentencing, maintaining counsel was ineffective for failing to challenge the constitutionality of the restitution orders—$60,262.70, corresponding with the fraud loss amount—on the ground that the loss amount was

---

[5] Diarra also cites *Flores-Figueroa v. United States*, but that decision specifically addressed the knowledge element required for a conviction under 18 U.S.C. § 1028A.  *See* 556 U.S. 646, 647 (2009) (holding that in an 18 U.S.C. § 1028A prosecution, the Government must prove the defendant knew the "means of identification" he unlawfully transferred, possessed, or used in fact belonged to another person.).  It did not construe the statute's "during and in relation to" language or support Diarra's contention that "the [G]overnment did not prove that the bank account information was used to obtain money, goods, or services in relation to a substantive fraud offense."  Accordingly, *Flores-Figueroa* does not advance his argument that the Government failed to prove a sufficient connection between the identity misuse and the predicate offense.

found by the Court rather than the jury. The Government responds that such an argument would have been frivolous and therefore cannot support an ineffective assistance claim. The Government is once again correct.

Petitioners' argument relies on *Apprendi v. New Jersey*, which held that the Sixth Amendment requires a jury to find any fact that increases a defendant's sentence beyond the statutory maximum.[6] 530 U.S. 466, 490 (2000). In *United States v. Booker*, the Supreme Court specifically applied *Apprendi* to the Federal Sentencing Guidelines, holding that "[a]ny fact . . . which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 543 U.S. 220, 244 (2005).

But the Third Circuit, sitting *en banc*, has held that *Booker* does not extend to restitution. In *United States v. Leahy*, the court concluded that restitution is not the type of criminal punishment that triggers Sixth Amendment protections under *Booker*, and therefore "the amount a defendant must restore to his or her victim need not be admitted by the defendant or proved to a jury beyond a reasonable doubt." 438 F.3d 328, 331, 337 (3d Cir. 2006). As *Leahy* explained, the conviction itself authorizes restitution in the "full amount of each victim's loss[]," and the court's determination of the precise loss amount "merely giv[es] definite shape" to the restitution

---

[6] Diarra also invokes the Seventh Amendment and the structural limits of Article III. Both provide no assistance. The Seventh Amendment applies only to civil trials, not criminal trials like the one here. *See* U.S. Const. amend. VII ("In Suits *at common law*, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.") (emphasis added); *Reid v. Covert*, 354 U.S. 1, 9 n.12 (1957) ("The Sixth Amendment reaffirmed the right to trial by jury in criminal cases and the Seventh Amendment insured such trial in civil controversies."). Also, judicial factfinding at sentencing does not pose any structural concerns. *See Mistretta v. United States*, 488 U.S. 361, 364 ("Historically, federal sentencing-the function of determining the scope and extent of punishment-never has been thought to be assigned by the Constitution to the exclusive jurisdiction of any one of the three Branches of Government.").

obligation that flows from the conviction. *Id*. at 337. It is not, as Petitioners suggest, that the conviction authorizes restitution only in the amount of zero dollars such that a judicial finding of loss improperly increases the sentence beyond the maximum authorized by the jury's verdict. Accordingly, any *Apprendi/Booker* challenge to the restitution amount would have been foreclosed by binding Third Circuit precedent, and counsel cannot be deemed ineffective for failing to raise a meritless argument.[7] *See Sanders*, 165 F.3d at 253.

### B. Sentencing

Doumbia alone raises two constitutional challenges to the Guidelines calculation and sentencing factfinding procedure that he believes warrant habeas relief. First, he contends that the jury—not the Court—was required to determine facts concerning the "nature and circumstances" of the offenses for sentencing purposes. Second, Doumbia asserts that *Brady* required the Government to disclose that "the guarantees of Article III adjudication were being waived" through the nature of the sentencing process.

---

[7] Diarra separately raises a constitutional challenge to the restitution process. His argument has two parts: (1) the District Court allegedly erred by using the Sentencing Guidelines' $500-per-card estimate contained in the Application Notes in calculating loss, and (2) judicial factfinding as to restitution allegedly violates the Constitution. As to the first point, Diarra is factually incorrect. The Court expressly declined to apply the $500-per-card estimate and instead calculated actual loss based on the evidence introduced at trial. As the sentencing transcript reflects:

> In this case the guideline [Application Note] has led or would lead to a harsher sentence than the text of the sentencing guidelines were to suggest, and thus I conclude that the commentary is not—should not be applied here and therefore I will not apply it.

Transcript of Sentencing Hearing, Page 45. Accordingly, Diarra cannot obtain relief on the theory that restitution was derived from the $500-per-card estimate, because the Court did not use that methodology.

Nor does Diarra's broader argument that judicial factfinding as to restitution violates the Constitution provide a basis for relief. As discussed above, binding Third Circuit precedent holds that restitution amounts need not be found by a jury beyond a reasonable doubt, and judicial factfinding as to the amount of restitution does not violate *Apprendi*/*Booker*. *See Leahy*, 438 F.3d at 328.

12

### i.   *Nature and Circumstances*

18 U.S.C. § 3553(a) directs sentencing courts to consider, among other factors, "the nature and circumstances of the offense." 18 U.S.C. § 3553(a). 18 U.S.C. § 3661 further provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. Doumbia argues that permitting the Court to determine the "nature and circumstances" of his offense for sentencing purposes under 18 U.S.C. §§ 3553(a) and 3661 amounts to an unconstitutional delegation of legislative power and that any such facts must be found by the jury. The Government responds that no constitutional violation occurred, and, in any event, that Doumbia procedurally defaulted the claim by failing to raise it on direct appeal.

The Government is correct that Doumbia procedurally defaulted this argument. As a general rule, issues "not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro*, 538 U.S. at 504 (citations omitted). This doctrine, referred to as the procedural default rule, operates "to conserve judicial resources and to respect the law's important interest in the finality of judgments" by inducing litigants to raise their arguments at the earliest instance. *Id.* Because Doumbia did not raise this claim on appeal, he must demonstrate both cause and prejudice for the Court to consider it on collateral review.

To establish cause, a petitioner must identify an objective reason that prevented compliance with the procedural rule. *See Coleman v. Thompson*, 501 U.S. 722, 753 (1991). To establish prejudice, the petitioner must show "that [the error] worked to his *actual* and *substantial* disadvantage." *Frady*, 456 U.S. at 170 (emphasis in original). As courts have observed, "[t]he prejudice standard applied in the ineffective assistance context is nearly

13

identical to the actual prejudice standard for excusing a procedural default." *Holloway v. Horn*, 161 F. Supp.2d 452, 479 (E.D. Pa. 2001), *rev'd on other grounds*, 355 F.3d 707 (3d Cir. 2004). Because both cause and prejudice are required, a court will not excuse procedural default if either showing is lacking. *Ross v. Adm'r E. Jersey State Prison*, 118 F.4th 553, 565-66 (3d Cir. 2024).

Even setting aside that Doumbia does not address procedural default in his briefing, he could not establish prejudice in any event because the underlying argument lacks merit. *See, e.g.*, *Ford v. Wenerowicz*, 2013 WL 460107, at *6 (E.D. Pa. Feb. 7, 2013) ("Since Petitioner has not demonstrated that his defaulted claim has any merit, he cannot establish cause and prejudice to excuse his procedural default in this case."). A district court does not violate the Sixth Amendment by relying on judge-found facts at sentencing so long as it recognizes the advisory nature of the Sentencing Guidelines and the resulting sentence does not exceed the statutory maximum authorized by facts admitted by the defendant or found by a jury. *See Booker*, 543 U.S. at 246-49 (remedying the constitutional concern by rendering the Guidelines advisory rather than mandatory). The Court did precisely that here. Transcript of Sentencing Hearing, Page 4 ("I am first going to calculate the *recommended* sentence under the guidelines . . .") (emphasis added). Accordingly, the claim is procedurally defaulted and, in any event, fails on the merits; no constitutional violation warrants habeas relief.[8]

---

[8] Doumbia also argues that judicial factfinding at sentencing violates Article I's mandate that Congress define crimes, as well as the Fifth Amendment's guarantee of due process and the Seventh Amendment's right to a jury trial. These arguments are unavailing.

First, judicial factfinding at sentencing does not intrude upon Congress's Article I authority to define crimes. *Booker*, 543 U.S. at 242 ("The constitutional guarantees that give rise to our concern in no way restrict the ability of legislatures to identify the conduct they wish to characterize as criminal or to define the facts whose proof is essential to the establishment of criminal liability. The constitutional safeguards that figure in our analysis concern not the identity of the elements defining criminal liability but only the required procedures for finding the facts that determine the maximum permissible punishment; these are the safeguards going to the formality of notice, the

### ii. *Brady*

As for Doumbia's assertion of a *Brady v. Maryland*, 373 U.S. 83 (1963) violation, it is premised on an argument that "the [G]overnment failed to disclose a critical material fact: that sentencing under 18 U.S.C. §[§] 3553(a) and[] 3661 does not operate within an Article III adjudicatory framework, but rather, under Article I administrative authority, where the sentencing judge determines the facts that increase punishment without a jury." That premise—that sentencing under Sections 3553(a) and 3661 is an Article I "administrative" process rather than an Article III adjudication—is incorrect. *See Mistretta*, 488 U.S. at 364 ("Historically, federal sentencing . . . never has been thought to be assigned by the Constitution to the exclusive jurisdiction of any one of the three Branches of Government"). Accordingly, because the underlying *Brady* theory (that sentencing is an administrative not an adjudicative function) lacks merit, Doumbia cannot establish prejudice sufficient to excuse procedural default, and the argument must fail.

### C. Evidentiary Hearing

A district court must hold an evidentiary hearing on a Section 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Where there is "no legally cognizable claim" or the factual matters

---

identity of the factfinder, and the burden of proof."). Second, judicial factfinding used to select a sentence within the statutory range does not violate due process. *United States v. Grier*, 475 F.3d 556, 562 (3d Cir. 2007) ("Judicial factfinding in the course of selecting a sentence within the permissible range does not offend the Fifth and Sixth Amendment rights to a jury trial and proof beyond a reasonable doubt."). Finally, as mentioned earlier, the Seventh Amendment applies to civil cases, not criminal prosecutions, and thus has no application here. *See* U.S. Const. amend. VII.

raised "may be susceptible of resolution through the district judge's review of the motion and records in the case," the court may decide the motion without a hearing. *United States v. Costanzo*, 625 F.2d 465, 470 (3d Cir. 1980). For the reasons set forth above, none of Diarra's or Doumbia's arguments are legally cognizable or present disputed issues of material fact requiring live testimony. Accordingly, an evidentiary hearing is unnecessary.

### D.  Certificate of Appealability

The only remaining issue is whether Diarra and/or Doumbia should be granted a certificate of appealability ("COA"), which is required for a petitioner to pursue an appeal "from . . . the final order in a proceeding under section 2255." 28 U.S.C. § 2253(c)(1)(B). A COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." *Id*. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy [Section] 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, reasonable jurists would not find the Court's conclusions debatable or wrong. Diarra's and Doumbia's arguments rest on legal theories that are unsupported by governing law and foreclosed by longstanding precedent. Accordingly, a certificate of appealability will not issue.

An appropriate order follows.

**BY THE COURT:**

**S/ WENDY BEETLESTONE**

_____
**WENDY BEETLESTONE, C.J.**